### BROWN vs UNITED STATES.

### Opinion delivered June 9, 1899.

*1. Murder—United States Law Governs.*

By the act of March 1, 1895 the United States statute concerning the crime of murder, is in force in the Indian Territory both as to the degree and penalty, and not the statute of Arkansas.

*2. Murder—Penalty under United States Statute.*

§ 5359 Rev. St. U. S. applying to the crime of murder, fixes only one degree of murder and only one penalty, that of death.

*3. Murder—Degree—Instruction.*

On a prosecution of murder under § 5339 Rev. St. U. S., it is not

error to refuse to charge the jury that they must find in what degree the defendant is guilty of murder.

4. *Indictment—Murder—Several Counts charging same offense—Conviction on one, a conviction on all.*

There were two counts in the indictment, the first charged defendant with killing deceased with a gun; the second charged him with killing him with a pistol. Upon the first trial defendant was convicted upon the second count. The verdict in this conviction was set aside and on the next trial the defendant was convicted upon the first count. *Held*, That the two counts charged the same offense. That a convic ion upon either count was tantamount to a conviction on the other, and that failure to convict, or to make mention of the first count on the first trial was not an acquittal on that count and defendant could be convicted upon the first count on second trial.

5. *Indictment—Killing with gun sustained by proof that killing was with pistol, or other like weapon.*

An indictment charging a killing to have been done with a gun is sustained by proof that the killing was done with a pistol, shot gun, rifle, musket, or any kindred weapon.

6. *Indictment—Several counts—Surplusage.*

Under an indictment the first count of which charged the killing to have been done with a gun, the second to have been done with a pistol, the second count will be held to be surplusage.

7. *Indictment—Several counts charging distinct offense—Conviction on one, acquittal as to others.*

If an indictment contains more than one count charging different offenses, and defendant is found guilty as to one, and the verdict is silent as to the others, he will be held to be acquitted upon those counts concerning which, the verdict is silent, and a plea of former jeopardy will be sustained.

8. *Indictment—Separately Stating the same Crime—Verdict.*

When an indictment, consisting of several counts, is founded upon a single transaction the verdict is a unit, and a verdict upon one of the counts is equivelant to a verdict upon all, and if a new trial is granted on defendants motion the case is open

for retrial upon the counts upon which he was acquitted, as well as those upon which he was convicted.

9. *Instruction as to accessory—Harmless error where proof undisputed that defendant a principal.*

It is error to give an instruction relating to an accessory though it stated the law correctly, when the indictment does not charge the defendant as being an accessory to the crime, but in as much as the proof was uncontradicted that defendant was present and if guilty at all was guilty as a principal, the jurory could not be mislead by it, and it will be held harmless error.

10. *Instructions—Review—Exceptions must be specific.*

The attention of the court should be directed specifically and directly to that part of the charge, which is complained of as error and if this is not done the objections will not be considered on appeal.

Appeal from the United States Court for the Northern district.

JOHN R THOMAS, Judge.

Cyrus A. Brown was convicted of murder, and appeals. Affirmed.

*J. H. Koogler* and *John Watkins,* for appellant.

*P. L. Soper,* for appellee.

CLAYTON, J. On the 17th day of July, 1897, the defendant, Cyrus A. Brown, was convicted of murder upon an indictment of the usual common-law form for that offense. The indictment contained two counts. The first alleged that the killing was done with a gun; and the second, that it was done with a pistol. With this exception, the two counts were identical. The verdict of conviction was upon

the second count. It was silent as to the first. On motion of the defendant this verdict was set aside, and a new trial granted. On the 17th day of December, 1897, the defendant was again tried upon the same indictment. This trial resulted in a verdict of guilty upon the first count of the indictment, instead of the second, as before. It was silent as to the second count. On this verdict the defendant was sentenced to be hanged.

The evidence taken at the trial was not brought up to this court by the bill of exceptions, but there is filed the testimony of the defendant, with an agreed statement by counsel on either side that it may be considered as part of the record in the case, and that it was upon this testimony, if any, that the instructions of the lower court concerning accessories was given.

The defenant filed 12 assignments of error, presenting the following points: First. That the court erred in failing to charge the jury to find by their verdict, in case they should find the defendant guilty, the degree of murder of which they should convict him. Second. That the jury having found a verdict of guilty against the defendant, without having specified the degree,—whether the first or second,—the court erred in pronouncing the death sentence upon him. Third. As the verdict of guilty at the first trial was on the second count of the indictment, and was silent as to the first, this was equivalent to an acquittal on the first count, or at least it was jeopardy as to it, and inasmuch as the verdict of guilty at the last trial was on the first count, and silent as to the second, this was equivalent to an acquittal on the second count; and so, the defendant at the two trials having been acquitted on both counts of the indictment, he is entitled to his discharge, and it was error to sentence him on the verdict. Fourth. That as the defendant was charged as principal in the indictment, and

not as an accessory before the fact, the court erred in giving an instruction on the law of accessory before the fact.

The first two propositions may be considered together. As to them the contention is that, notwithstanding the fact that the laws of the United States had provided a punishment for the crime of murder, the act of congress of March 1, 1895, put in force in this jurisdiction all of those parts of chapters 45 and 46 of Mansfield's Digest of the Laws of Arkansas relating to the crime of murder, and as these statutes divide the crime into two degrees,—the first and second (the punishment of the first being death, and of the second imprisonment for not less than 5 nor more than 21 years),—and require the jury on a verdict of guilty, to find the degree of the offense, the court should have charged the jury that in case of conviction they must find by their verdict whether the defendant be guilty of murder in the first or second degree, and as in this case the verdict was a general one, without finding the degree in which the defendant was guilty, no sentence could be pronounced upon it, especially the higher one of death. If it be true that the Arkansas statute relating to murder is in force in this jurisdiction, there is no doubt but that the position taken by learned counsel for the defendant is correct, and that the court erred in not instructing the jury to find by their verdict, if it should be for conviction, the degree of the offense in which they should find the defendant guilty, and in pronouncing the death sentence against him. Section 5339, Rev. St. U. S., provides: "Every person who commits murder—First, within any fort, arsenal, dock-yard, magazine, or in any other place or district or country under the exclusive jurisdiction of the United States; second, or upon the high seas, or in any arm of the sea, or in any river, haven, creek, basin, or bay within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of any particular state; third, or who upon any such waters maliciously

strikes, stabs, wounds, poisons or shoots at any other person, of which striking, stabbing, wounding, poisoning or shooting, such other person dies, either on land or at sea, within or without the United States, shall suffer death." Section 2145, Rev. St. U. S., tit. "Indians," provides: "Except as to crimes the punishment of which is expressly provided for in this title, the general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country." The third paragraph of section 4 of the act of congress of March 1, 1895, entitled "An act to amend an act entitled 'An act to establish a United States court in the Indian Territory, and for other purposes,'" provides: "The provisions of chapter forty-five of Mansfield's Digest of the General Laws of Arkansas, entitled 'Criminal Law,' except as to the crimes and misdemeanors mentioned in the proviso of this section, and chapter forty-six of said Laws of Arkansas, contained in said digest, entitled 'Criminal Procedure,' and chapter ninety-one of said General Laws, regulating the jurisdiction and procedure before justices of the peace in civil cases, be, and they are hereby, extended to and put in force in the Indian Territory; and the jurisdiction to enforce said provisions is hereby conferred upon the United States court in the Indian Territory; provided, that in all cases where the laws of the United States and the said criminal laws of Arkansas have provided for the punishment of the same offenses, the laws of the United States shall govern as to said offenses, except for the crime of larceny, the punishment for which shall be that prescribed by the laws of the state of Arkansas, any law in force in said Indian Territory to the contrary notwithstanding." Section 5339, Rev. St. U. S., relating to the crime of murder, above set out, was in existence and operation in the Indian Territory at the time and long before the passage of the said act

of March 1, 1895. Both the laws of the United States and those of Arkansas provide a punishment for the crime of murder. Those of the United States provide that it shall be death; and those of Arkrnsas, that, if in the first degree, it shall be death, and, if in the second degree, imprisonment for not less than 5 nor more than 21 yesrs. Both statutes therefore fix the punishment for the crime of murder, and by the terms of the said act of March 1, 1895, ' the laws of the United States shall govern as to said offenses.'' This is the very language of the act. It is claimed, however, by the learned counsel for the defendant, that the intent of the act was simply to attach the punishment provided by the federal statute to the Arkansas law; that the definition of the crime, and the statutory principles of law governing it, are to be regulated by the Arkansas law, and the punishment alone by the law of the United States. But the proviso to the statute is, ''That in all cases where the laws of the United States and the said criminal laws of Arkansas have provided for the punishment of the same offenses, the laws of the United States shall govern as to said offenses.'' If we hold to the view advocated by counsel for the defense, the jury, in all cases of murder, must be instructed to find by their verdict the degree of the offense, and, in case they find for murder in the second degree, the punishment must nevertheless be under the United States statute, which is death, because murder under that statute includes the crime in all of its degrees, and has affixed this punishment to it. Murder, under the United States statute, means murder as defined by the common law, and by that law there is but one degree. Section 1516 of the Arkansas statute declares that ''murder is the unlawful killing of a human being in the peace of the state, with malice-aforethought, either express or implied.'' And this is a good common-law definition of the crime, and it embraces murder in all of its degrees. Because the Arkansas statute divides this crime into two

Murder
U. S. statute
governs.

But one
degree of
murder
under U. S.
statute.

degrees is no reason for the contention that the second degree is not murder. Murder in this degree contains the element of malice aforethought as fully and as completely as murder in the first degree, and therefore murder in either degree, under Mansfield's Digest, is simply murder at the common law, and the United States statute has prescribed the punishment of death for such murder; and whether the jury find guilt in the first or second degree, by virtue of the act of congress of March 1, 1895, the sentence must follow as prescribed by the federal statute. The only object of the Arkansas legislature in dividing the crime into two degrees was to apportion the punishment so that those who should kill with malice aforethought, but under less aggravated and atrocious circumstances than other, should receive less punishment. It was not intended that another crime should be created, but only that the existing one should be divived into two parts,—each part, however, containing all of the elements of murder as defined by the statute and by the common law. Murder in the second degree, under Mansfield's Digest, is murder at common law, and murder at common law is murder under the United States statute, and, those statutes having prescribed a punishment for it, the laws of the United States as to the offense prevail; and therefore the court did not err either in failing to instruct the jury as to the degrees of murder, or in sentencing the defendant to death on the verdict. Since the enactment of the aforesaid statute, congress, by the act of January 15, 1897 (29 Stat. 487), has practically divided the crime of murder into the first and second degrees, by providing that in all cases where the accused is found guilty of the crime of murder, etc., the jury may qualify their verdict by adding thereto, "without capital punishment," in which case, instead of the death penalty, imprisonment for life follows.

The next proposition presented for our decision is, ' 'Does the fact that the jury, by their verdict at the first trial

of defendant, found him guilty on the second count, and failed to make mention of the first count of the indictment, act as a bar to further prosecution on the first count after the verdict has been set aside, and a new trial granted, on the motion of the defendant?" As heretofore stated, the indictment was in the usual common-law form, with two counts,—the first alleging that the killing was done with a loaded gun; and the second, that it was done with a loaded pistol. In every other respect they were identical. It needs no argument to show that these two counts charged the same offense. In both the same person is charged with having done the killing; the same man is alleged to have been killed; the crime is alleged to have been committed at the same time and place, and under all of the same circumstances, except that the second count, upon which defendant was first convicted, charged that the killing was done with a pistol, while the first alleged that it was done with a gun; and if done with a pistol, as the jury found at the first trial, it was, in law, done with a gun, as alleged in the first count. And if the jury had found him guilty on the first count,—with having committed the offense with a gun,—proof that it was done with a pistol would have sustained the verdict. In other words, proof of the killing having been done with a pistol, a shotgun, a rifle, a musket, or any kindred weapon, would have supported a verdict of guilty upon either or both counts of the indictment. Whart. Prec. Ind. 114. The adding to the indictment of the second count was surplusage, for while, technically, a pistol is not a gun, in the law of homicide it is; and therefore, notwithstanding the difference in the allegations as to the weapon used, in law the two counts are the same, and therefore it would be absurd to say that a conviction on one was an acquittal on the other, although the jury may not have mentioned it in their verdict. The rule, as we understand it, is that if an indictment contain more than one count, and different offenses are set

**Indictment. Surplusage.**

up in the different counts, then, on conviction on one, and silence by the jury as to the other, the defendant stands acquitted as to the counts not mentioned in the verdict, and as to those counts a plea of former jeopardy will be sustained, even though on the motion of the defendant the verdict of guilty on the count upon which he was convicted be set aside, and a new trial granted. In such case he can only be again put upon his trial on the count of the indictment upon which he had been convicted. But, when the different counts are simply formal variations in stating the same offense, then the granting of a new trial opens the whole case, and the defendant may be put upon his trial, and convicted on any of the counts. Whart. Cr. Pl. & Prac. §§ 788, 895; Bish. Cr. Law, 1006; Lesslie vs State, 18 Ohio St. 391; Jarvis vs State, 19 Ohio St. 585; Bailey vs State, 26 Ga. 579; Mitchell vs State, 8 Yerg. 514; State vs Stanton, 23 N. C. 424; State vs Commissioners of Cross Roads, 3 Hill, 239. In Lesslie vs State, above cited, the court say: "Where the indictment, though consisting of several counts, is founded upon a single transaction, the verdict is a unit, and lays the foundation for but a single judgment. A verdict of guilty upon one of the counts, and of not guilty upon the others, is followed by the same legal consequences as a verdict of guilty upon all the counts; and when, in either case, the verdict is set aside and a new tr.al granted on the defendant's motion, the case is opened for retrial upon the counts upon which he was acquitted as well as those upon which he was convicted. If this were not so, the value and object of the rule allowing a single offense to be charged in different ways in several counts would be greatly impaired, and often defeated. But, when the several counts of an indictment are for separate and distinct offenses, the verdict is necessarily several in its nature, and the finding as to each offense constitutes the basis of a separate judgment. It is the same, in effect, as if rendered on separate indict-

Indictment. Several counts. Verdict.

Indictment. When verdict equivalent to verdict on all

ments. In such case the granting of a new trial on conviction of one offense has no connection with the verdict of acquittal of others, and the latter may well be allowed to stand and have effect, though the former should be set aside." The case of Selvester vs U. S., 170 U. S. 262, 18 Sup. Ct. 580, is not in conflict with this view. In that case the several counts of the indictment charged a distinct offense, and the reasoning of the supreme court is in harmony with the Ohio case on the question under consideration. And as the new trial on this case was had on the motion of the defendant, and as but one offense was charged in the indictment, we hold that no error was committed at the second trial in putting the defendant on his trial upon the first count; and especially is this so in this jurisdiction. Section 2299, Mans. Dig., provides: "The granting of a new trial places the parties in the same position as if no trial had been had. All of the testimony must be produced anew and the former verdict cannot be used or referred to in evidence or in argument." While this section does not have the effect of placing the parties in the same position as if no trial had been had as to counts of an indictment which charge separate and distinct offenses, upon some of which there has been a verdict of guilty, and upon others a verdict, either in fact or implied, of not guilty. It does have that effect when the different counts of the indictment charge but one offense. The supreme courts of both Kansas and Utah, construing statutes identical with section 2299, Mansf. Dig. above set out, hold that a new trial on the motion of the defendant opens up the whole case, as set out in the indictment, to be retried. State vs Kessler (Utah) 49 Pac. 293; State vs McCord, 8 Kan. 232. See, also, U. S. vs Harding, 26 Fed. Cas. 138.

The fourth proposition is that as the defendant was charged in the indictment as principal to the crime of murder, and not as an accessory before the fact, the court erred

in giving the following instruction: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, Brown, was present at the time of the killing of Cuthbert; and if you believe that he had previously thereto entered into a conspiracy with Johnson Morgan to kill and murder Cuthbert, and knew of the commission of the crime, and neither raised his voice nor gave information of the fact at the time nor after its commission; or if you believe from the evidence that he, being present, aided, abetted, or assisted in the killing of Cuthbert, or, not being present, had advised and counseled the killing of Cuthbert,—then and in that case, gentlemen of the jury, if those facts have been proved beyond a reasonable doubt, whether he fired the gun, or some one else fired, he would be guilty. I say, if he were there, aiding, abetting, or assisting, or if he were there in conformity with an agreement, previously entered into, to assist in case it was found necessary, then and in that case you should find him guilty, whether he fired the shot, or some one else fired it." The part of this instruction assigned as error is that the jury are told that if the defendant was not present, but had advised and counseled the killing of deceased, he would be guilty. This part of the instruction applies only to the offense of an accessory before the fact, and, as the indictment did not charge that, it was error to give it. But the question we are called upon to decide is, was it reversible error? And that will depend upon the act as to whether it was prejudicial, in any degree, to the defendant's rights in the case. As before stated, the evidence in the case was not brought up by the record, except that, by agreement of counsel, the defendant's testimony is filed, to be considered as of record, with the further agreement that it was upon this testimony, if upon any, that the instruction was given. So far as it affects this question, this testimony is to the effect that the killing occurred in the cabin of a small fishing boat, in the nighttime, and positively and certainly

(38)

shows the defendant present at the killing, and there is no testimony before us tending to show that he was absent; and as it is, in law, imperatively necessary that the defendant shall be absent at the time and place of the killing, having advised or encouraged it, to constitute an accessory, and there having been no testimony upon which to found the instruction, it is impossible that the jury, finding their verdict upon the facts in proof before them, could have been misled by the instruction.   As an abstract principle of law, the instruct on was correct, but, as the defendant was not indicted as an accessory, it was error to give it; but, inasmuch as there was no proof to sustain the charge, so there was no proof by which the jury could be misled in considering it.   When they came to apply the charge to the proof, if they did so, they found a total lack of evidence by which they could give it effect in the remotest degree.   The defendant himself admitted his presence, and there was no proof to the contrary.

**Instruction as to accessory. Error** *(margin)*

The exception to this charge failed to call the attention of the court to the objectionable parts.   It is as follows: "To the latter part of which charge the defendant then and there excepted."   Referring to the latter part of the charge, —that objected to by the form of the exception,—we find it to be sound law.   It is:   "I say, if he [the defendant] was there, aiding, abetting, or assisting, or if he was there in conformity with an agreement previously entered into, to assist in case it was found necessary, then and in that case, you should find him guilty, whether he fired the shot, or some one else fired it."   The erroneous part of the charge was evidently a mere inadvertence on the part of the court, and, doubtless, if its attention had been called to it, it would then and there have been corrected.   It was but due to the court, and it is what the law requires in saving exceptions, that the attention of the court should be directed specifically and directly to that which is claimed to be error.   In this

**Instruction. Exception to must be specific.** *(margin)*

case the jury was fully and correctly charged upon every other phase of the case. This was the only exception saved to it, except as to the degree of murder; and, as before stated, we think this not prejudicial error. While, in a criminal case of this importance, we would not ordinarily, nor have we done so in this case, decline to pass upon error not properly excepted to, yet we think it not improper to call attention of counsel to this matter, that hereafter more care may be exercised in saving exceptions.

We think there was no prejudicial error in the case. Affirmed.

SPRINGER, C. J., and TOWNSEND, J., concur.